# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Nationwide Affordable Housing Fund 4, LLC,** *et al.*,

    Plaintiffs,     :     Case No. 2:19-cv-1848

    v.                        Judge Sarah D. Morrison
                        :     Magistrate Judge Kimberly A. Jolson

**Urban 8 Danville Corporation,** *et al.*,

    Defendants.

## **CLARIFIED OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue. (ECF No. 10.) Plaintiffs filed a Memorandum in Opposition to the Motion (ECF No. 13), and Defendants filed a Reply (ECF No. 15). The matter is now ripe for decision.

## I.    BACKGROUND

This case stems from a business dispute between Plaintiffs and Defendants, the details of which are complicated and are mostly extraneous to this opinion. The facts relevant to the Court's disposition are mostly undisputed.

Plaintiff Nationwide Affordable Housing Fund 4, LLC, ("Nationwide") is a limited liability company ("LLC") with one managing member, Wentwood ORC Advisors, LLC, ("Wentwood ORC"). (Amended Compl. ¶¶ 17–18, ECF No. 12.) Nationwide is the current and only Investor Limited Partner in two partnerships, the Urban Danville Limited Partnership (the "UDLP") and the Urban Macomb Limited Partnership (the "UMLP"). (*Id.* ¶ 16.) The UDLP and UMLP own low-income housing, which allows them to receive tax credits. (*Id.* ¶¶ 29–31, 39–41, 48–52.)

1

Plaintiff SCDC, LLC, ("SCDC") is the Special Limited Partner of both the UDLP and the UMLP. (*Id.* ¶ 21.) Wentwood ORC is the sole member of SCDC. (*Id.* ¶ 23.) Defendant Urban 8 Danville Corporation is the general partner for the UDLP. (*Id.* ¶ 25.) Defendant Urban 8 Macomb Corporation is the general partner for the UMLP. (*Id.* ¶ 27.)

The UDLP and UMLP Limited Partnership Agreements (the "Agreements") each contain a provision (the "Option Provision") entitling Defendants to purchase Plaintiffs' property interests upon exercise of an option during a designated option period. (*Id.* ¶¶ 61, 63.) The Agreements also lay out the terms of a "Sale Preparation Fee" in connection with the sale of the properties controlled by the partnerships. (*Id.* ¶¶ 114–17.)

On September 6, 2018, Urban 8 Fox Lake Corporation ("Fox Lake") and Urban 8 Zion Corporation ("Zion") filed a lawsuit (the "First Illinois Action") in the Northern District of Illinois against Nationwide, SCDC, and Wentwood Capital Advisors, LP ("Wentwood Capital"). (Compl., at 1, Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4, LLC, No. 1:18-CV-6109, ECF No. 1 (N.D. Ill. Sept. 6, 2018).) The case was assigned to Judge Thomas Durkin. Fox Lake and Zion are "affiliates" of Defendants that, like Defendants, are partners in low-income housing partnerships in which Plaintiffs are limited partners. (Def. Mot. Dismiss, at 8–9, ECF No. 10.)

The contracts at issue in the First Illinois Action involve provisions that are substantively the same as the Option Provision and the Sale Preparation Fee provision in the Agreements in this case. (*Compare* ECF No. 12 ¶¶ 54, 115, *with* No. 1:18-CV-6109, ECF No. 1 ¶¶ 40–42.) In the First Illinois Action, Fox Lake and Zion have alleged, among other things, that Defendants have breached the governing agreement's version of the Option Provision and are seeking a

declaratory judgment regarding the meaning of the governing agreement's version of the Sale Preparation Fee provision. (No. 1:18-CV-6109, ECF No. 1 ¶¶ 71–80, 98–109.)

On September 7, 2018, Defendants' counsel sent an e-mail to in-house counsel for Wentwood Capital with a courtesy copy of the complaint in the First Illinois Action. (ECF No. 10, at 5.) Over the next several months, Plaintiffs and Defendants became enmeshed in a dispute that primarily involved the Option Provision. It is unnecessary for purposes of this motion to discuss the multiple bouts in this fight. On May 3, 2019, Defendants' counsel sent a letter to counsel for Plaintiffs enclosing a copy of a draft complaint that Defendants intended to file in the Northern District of Illinois on May 10, 2019, unless Plaintiffs made an earlier settlement offer. (*Id.* at 7–8.)

Before Defendants filed their draft complaint, on May 8, 2019, Plaintiffs filed the Complaint with this Court. (ECF No. 1.)[1] Plaintiffs have sought a declaratory judgment regarding the Option Provision or, in the alternative, the Sale Preparation Fee provision, and have brought a breach of contract claim alleging a breach of the Option Provision. (ECF No. 12 ¶¶ 119–138.)

On May 10, 2019, Defendants filed their previously-threatened complaint in the Northern District of Illinois. (ECF No. 10, at 8; Compl., at 1, Urban 8 Danville Corp. v. Nationwide Affordable Housing Fund 4, LLC, No. 1:19-CV-3171, ECF No. 1 (N.D. Ill. May 10, 2019).) In their complaint (the "Second Illinois Action"), Defendants have brought a breach of contract claim—alleging a breach of the Option Provision—against Plaintiffs. (*Id.* ¶¶ 79–88.) Defendants seek a declaratory judgment regarding the Option Provision. (*Id.* ¶¶ 89–96.) Defendants also allege a claim of tortious interference with the Agreements against Wentwood Capital and a

---

[1] Plaintiffs have since filed an Amended Complaint, (ECF No. 12), but merely to correct typographical errors. (Pls. Resp. to Def. Mot. at 1 n.2, ECF No. 13.)

3

claim of fraudulent concealment against Plaintiffs and against Wentwood Capital. (*Id.* ¶¶ 97–114.)

Also on May 10, Judge Durkin held an off-the-record telephone call in which he advised the parties in the First Illinois Action that he intended to rule in favor of Fox Lake and Zion (at least in part) on the parties' cross-motions for summary judgment but that he would withhold the written opinion for the time being in order to provide the parties time to settle. (Joint Status Report, No. 1:18-CV-6109, at 3, ECF No. 114.) The decision in this summary judgment motion pertains to the meaning of the Sale Preparation Fee provision, and Judge Durkin understood this to be one of the same issues in the Second Illinois Action. (ECF No. 13-4, Ex. 12, 7:14–8:3.)

When Defendants filed the Second Illinois Action, the case was assigned to Judge Gary Feinerman. (No. 1:19-CV-3171.) However, on May 17, 2019, Fox Lake and Zion filed a motion (the "Related Case Motion") to reassign the Second Illinois Action to Judge Durkin on the grounds that it was related to the First Illinois Action. (1:18-CV-6109, ECF No. 96, at 6.)

On May 29, 2019, Judge Durkin held a status conference on the Related Case Motion to determine whether reassignment of the Second Illinois Action was appropriate. (ECF No. 13-4, Ex. 12.) During this status conference, Judge Durkin stated that he was inclined to grant the motion to reassign. (*Id.* at 7:14–16.) Judge Durkin reasoned that he had already decided—albeit informally—the Sale Preparation Fee issue and indicated his inclination to rule on this issue in the same way in the context of the Second Illinois Action. (*Id.* at 7:16–19.) Judge Durkin posited that "the critical issue" in both the First Illinois Action, the Second Illinois Action, and the case before this Court was the Sale Preparation Fee issue. (*Id.* at 7:24–8:3.) Counsel for Nationwide and SCDC objected to this characterization, arguing that the Sale Preparation Fee was not "the critical issue" in the Second Illinois Action and the case before this Court. (*Id.* at 10:9–25.) It is

4

apparent, however, that the Sale Preparation Fee is at issue in all three cases, regardless of the relative level importance of the issue.

During that status conference, Judge Durkin also directed the parties that if this Court were to transfer this case to the Northern District of Illinois and it were assigned to another judge, they should move to have it to reassigned to him. (*Id.* at 8:12–20.) Judge Durkin explained as follows: "I've put a significant amount of time into understanding the complexities of this deal and understanding the contract and giving you a preliminary ruling, which I'm going to follow up with a written ruling—[and] there is an economy associated with having one judge hear this rather than have three different judges giving you different interpretations possibly—or the same one." (*Id.* at 8:24–9:5.) Judge Durkin took the Related Case Motion under advisement, and on June 18, 2019, he made a finding that the First Illinois Action and Second Illinois Action were indeed related cases. (No. 1:19-CV-3171, ECF No. 108.) The Second Illinois Action was subsequently reassigned to Judge Durkin. (*Id.*)

Turning to the case before this Court, Defendants have filed a motion to dismiss, or in the alternative, to transfer venue to the Northern District of Illinois. (ECF No. 10.) Defendants argue that dismissal is warranted because this is a bad-faith, anticipatory suit that should be dismissed in favor of Defendants' own action filed in the Northern District of Illinois. (*Id.* at 10–16.) Plaintiffs insist that Defendants' allegations of bad faith are unfounded and that pursuant to the first-to-file rule, it is their suit—the case before this Court—that should be the one that proceeds. (Def. Resp. 9–17, ECF No. 13.)

Regarding the motion for transfer, Defendants argue that because the Northern District of Illinois is a more suitable forum, the case should be transferred to that district. (ECF No. 10 at

16–20.) Plaintiffs respond that the Southern District of Ohio is a proper forum for this action and that Defendants' motion to transfer is barred by the Agreements. (ECF No. 13 at 17–20.)

Because the Court agrees that the Northern District of Illinois is the more appropriate forum, the Court declines to address the merits of the motion to dismiss. These arguments are more appropriately made in the Northern District of Illinois upon transfer.

## II. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "[T]he purpose of th[is] section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge F.B.L.*, 364 U.S. 19, 26–27 (1960)).

"District courts have wide discretion in deciding motions to transfer." *Zimmer Enters., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio Mar. 13, 2007). In determining whether a case "might have been brought" in a particular venue, the court must look to whether a particular venue could exercise original jurisdiction over the case, would have personal jurisdiction over the defendants, and would be proper. *Id.* In evaluating convenience and the interests of justice, the relevant factors include: "'(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.'" *Id.* (quoting *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 96 (E.D. Mich. 1991)).

6

## III. ANALYSIS

To begin, Plaintiffs invoke Section 10.5 of the Agreements to argue that Defendants are barred from requesting transfer. The relevant provision states that venue under the Agreements is proper in the Southern District of Ohio and in the Northern District of Illinois, among other courts, and that the parties "waive[] any objection which he or it may have to they [sic] laying of venue of any such suit, action or proceeding in each of such courts." (ECF No. 12-1, at 49.) The Court assumes without deciding that Plaintiffs have properly construed this provision and that Defendants are barred from objecting to venue; however, this is immaterial to the Court's determination on the issue of transfer. Even if Defendants had objected to venue in this Court, which they did not, Section 1404(a) allows this Court to transfer a case *sua sponte*. *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 738 (6th Cir. 2003); *Carver v. Knox Cty.*, 887 F.2d 1287, 1291 (6th Cir. 1989). Thus, the Court may properly evaluate the merits of transfer even assuming Defendants may not properly object to venue in the Southern District of Ohio.

The Court now turns to the issue of appropriateness of transfer to the Northern District of Illinois. The Court must first determine whether the Northern District of Illinois is a venue where this case "might have been brought." There is no question that it is. First, the Northern District of Illinois has diversity jurisdiction over this matter. And, in fact, Judge Feinerman has already made a preliminary finding of complete diversity in the Second Illinois Action, a finding that is equally sound with respect to the case before this Court. (1:19-CV-3171, ECF No. 49.) Second, Defendants are Illinois corporations and are therefore subject to personal jurisdiction in the Northern District of Illinois. (ECF No. 12 ¶¶ 26, 28). Third, the parties have agreed to the propriety of venue in the Northern District of Illinois pursuant to the Agreements. (ECF No. 12-1, at 49.)

Next the Court examines issues of convenience and whether transfer would be in the interest of justice. Regarding convenience, there already exists a similar case involving Plaintiffs and affiliates of Defendants, as well as an identical case involving Plaintiffs and Defendants, currently pending in the Northern District of Illinois. This weighs heavily in favor of transfer. In terms of convenience, Defendants argue that all three cases involve at least some of the same key witnesses and that many (perhaps all) of these witnesses live outside of Ohio. (ECF No. 10, at 17–18.) Plaintiffs do not dispute this.

Rather, Plaintiffs' only rejoinder is that an unidentified third-party witness resides in the Southern District of Ohio and would not be subject to subpoena power in the Northern District of Illinois. (ECF No. 13, at 19.) The Court has taken this into consideration and does not discount the hardship of potentially denying Plaintiffs the ability to call this witness at trial. However, the Court draws adverse inferences against Plaintiffs on this issue from the striking lack of detail that they have provided. *Cf. Digital Filing Sys., LLC v. Aditya Int'l*, 323 F. App'x 407, 418 (6th Cir. 2009) ("[Based on the] defendant's failure to come forth with accurate or complete records, a court may draw adverse inferences from this lack of information."). Plaintiffs fail to identify who the witness is, the importance of the witness, the likelihood of calling him/her at trial, or the likelihood that he/she would voluntarily agree to appear. The Court gives no credence to the inability to call this witness when Plaintiffs offer nothing on which this Court can rely.

Regarding issues of convenience, Defendants also argue that the parties are represented by the same lead counsel in all three cases and that having all three cases in the same district (and, presumably, before the same judge) will allow for more consolidated and streamlined litigation. (ECF No. 10, at 18.) The Court finds this persuasive, and Plaintiffs offer nothing in response. The factors of convenience weigh in favor of Defendants.

The next three factors—ease of access to sources of proof, ability to compel unwilling witnesses, and cost of obtaining willing witnesses—deal with where the evidence is located. On this record, that weighs in favor of the Northern District of Illinois. Defendants are Illinois corporations, and the UDLP and UMLP were organized to oversee Illinois properties. The Court recognizes that Plaintiffs are Ohio LLCs, but even Plaintiffs do not argue that they have significant numbers of witnesses or evidence in Ohio. Rather, Defendants argue, without refutation, that many of the important witnesses are located in Texas. (ECF No. 10, at 18.) If not a convenient forum for individuals from Texas, the Northern District of Illinois is, at least, no more inconvenient than the Southern District of Ohio.

The sixth factor—efficiencies in trying the case—and the seventh factor—the interest of justice—are related. The two pending actions in the Northern District of Illinois tip these factors heavily in the direction of transfer. It is most efficient—and just—to have similar cases decided in the same forum, particularly in a case as complicated as this one. As Judge Durkin noted, it is time-consuming and resource-intensive to analyze the Agreements at issue. It does not make sense to duplicate these burdens unnecessarily. Moreover, deciding the same issues in multiple fora runs the risk of different judges deciding the same issues differently. This is not an uncommon problem, of course; however, it is certainly more convenient to avoid it, if possible. This is especially true when the cases at issue are in different circuits, meaning that it is not even possible for a circuit court to reconcile any differences.

Another consideration in the interest of justice calculus is the role of Wentwood Capital in this litigation. While the parties have referred to the Second Illinois Action as a "mirror image" of the case before this Court, (ECF No. 13, at 5; Def. Reply, at 3, ECF No. 15), a crucial difference between these cases is that in the Second Illinois Action, Defendants have brought

9

claims against Wentwood Capital that are not a part of this action. In the First Illinois Action, Wentwood Capital moved to dismiss the claims against it for lack of personal jurisdiction. (1:18-CV-6109, ECF No. 24, at 4–10.) Judge Durkin denied this motion. (*Id.* ECF No. 51.) However, Defendants predict that if they bring claims against Wentwood Capital in the case before this Court, Wentwood Capital will again move to dismiss for lack of personal jurisdiction. (ECF No. 10, at 14–15.) Moreover, Defendants impliedly concede that such a motion will be meritorious. (*Id.* at 15.) Were those eventualities to occur and the case before this Court were to proceed, Defendants would need to choose between maintaining separate litigation in Illinois or forgoing their claims against Wentwood Capital. Efficiency in this regard also favors transfer to the Northern District of Illinois.[2]

Plaintiffs make two final arguments in opposition to transfer. First, they argue that the Southern District of Ohio is not an improper forum. (ECF No. 13, at 19.) Defendants do not dispute this. (ECF No. 15, at 8.) That is not the issue here—it is in the Court's discretion to transfer this case from an adequate forum to a better one.

Second, Plaintiffs argue that cases go to trial faster in the Southern District of Ohio than in the Northern District of Illinois and that this is a "legitimate consideration" for selecting the Southern District of Ohio as Plaintiffs' chosen forum. (ECF No. 13, at 20.) The relevance of this statistic is questionable. In fact, Defendants point out that while this may be true, the Southern District of Ohio has a greater workload than the Northern District of Illinois based on the

---

[2] Plaintiffs' only response to this argument is that the claims against Wentwood Capital lack merit and are subject to dismissal for lack of personal jurisdiction. (ECF No. 13, at 11–12.) First, Judge Durkin has already decided the personal jurisdiction issue—at least to the extent as is relevant at this point. Second, given that those claims are not before the Court, the Court is disinclined to weigh in on their merits. Taking this argument into consideration seems to put the cart before the horse. In other words, the Court will not deny transfer and effectively bar Defendants the ability to bring their claims against Wentwood Capital in the same action as the other related claims without even giving Defendants the opportunity to establish the viability of the claims against Wentwood Capital.

Administrative Office of the U.S. Courts' weightings of the filings in each district. (ECF No. 10 at 20.) And while cases may, on average, go to trial faster in the Southern District of Ohio, the statistics show that disposition of cases is quicker, on average, in the Northern District of Illinois. (*Id.*) This argument is, at best, a wash. It does not outweigh the other factors favoring transfer.

On balance, the factors weigh in favor of transfer to the Northern District of Illinois, and the Court *sua sponte* **ORDERS** this transfer.

## IV. CONCLUSION

For the reasons set forth above, the Court **ORDERS** the Clerk to transfer this action to the United States District Court for the Northern District of Illinois. Accordingly, Defendants' Motion to Dismiss is **DENIED** as moot. Defendants' Motion to Transfer is also **DENIED** as moot.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**